IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-10-01023-TUC-CKJ |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Victorino Enriquez-Cruz, | |
| Defendant. | |

On February 22, 2013, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation (Doc. 113), in which he recommended that the District Court find by a preponderance of the evidence that the Defendant is competent to proceed to trial.

**I.      STANDARD OF REVIEW**

The Court reviews *de novo* the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the un-objected to portions of the Report and Recommendation. Advisory Committee Notes to Fed.R.Civ.P. 72 (citing *Campbell v. United States Dist. Court,* 501 F.2d 196, 206 (9th Cir.1974)); *see also Conley v. Crabtree,* 14 F.Supp.2d 1203, 1204 (D.Or.1998).

**II.     BACKGROUND**

On April 14, 2010, Defendant, Victorino Enriquez-Cruz, Jr., was arrested and charged in a criminal complaint with possession of methamphetamine with intent to

distribute. (Doc. 1). Attorney Roger H. Sigal was appointed to represent Defendant on that same date. (Doc. 3). Thereafter, the Defendant was indicted in a two count indictment charging him with importing and possessing approximately 8.22 kilograms of methamphetamine. (Doc. 4). After extensions of the plea and trial date, Defendant filed a Seventh Motion to Continue Trial and Plea Deadline on May 5, 2011. (Doc. 28). In his Motion, defense counsel explained that the Defendant's sister revealed to counsel for the first time that she believed the Defendant was "retarded." On May 25, 2011, Defense counsel filed a motion requesting a psychological evaluation of the Defendant to determine his competency to stand trial. (Doc. 33). The Magistrate Judge granted Defendant's Motion on June 3, 2011. (Doc. 35).

Dr. David Hermosillo-Romo evaluated the Defendant and submitted a written evaluation to the Court in which he concluded that the Defendant is not competent to stand trial. (Doc. 47). On September 16, 2011, the Magistrate Judge conducted a hearing in which the court reviewed Dr. Hermosillo-Romo's evaluation and found by a preponderance of the evidence that the Defendant was not presently competent to stand trial. (Doc. 49). Pursuant to 18 U.S.C. §4241(d), the Defendant was committed to the custody of the Attorney General and hospitalized at the Federal Bureau of Prisons Medical Center, Butner, North Carolina ("Butner"), to determine whether he would attain the capacity to proceed to trial. *Id*. Thereafter, the Defendant was evaluated by Drs. Sarah Ralston, M.D., and Maureen L. Reardon, Ph.D., ABPP. On April 10, 2012, the Magistrate Judge received an evaluation, which stated that the Defendant was able to display a rudimentary understanding of the circumstances surrounding the allegations against him, and could assist in his own defense. (Doc. 56). This evaluation opined that the Defendant was now competent to stand trial. *Id*.

The Magistrate Court conducted a competency hearing, which began on October 10, 2012. Dr. Sarah Ralston testified for the government and Dr. Hermosillo-Romo and the Defendant's sister, Olivia Flores, testified for the defense. The hearing was continued on December 7, 2012 and concluded on January 11, 2013. On February 11, 2013, the

government filed its Memorandum in Support of a Finding of Defendant's Competency to Stand Trial. (Doc. 107). Defendant filed his Memorandum in Support of Motion to Determine Defendant Not Competent to Stand Trial and Not Restorable on February 12, 2013. (Doc. 108).

On February 22, 2013, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation (Doc. 113), in which he recommended that the District Court find by a preponderance of the evidence that the Defendant is competent to proceed to trial. The Report and Recommendation granted each party fourteen days to file objections and a subsequent fourteen days to file a response to any objections. *Id*. However, the Report and Recommendation specifically provided that no reply briefs on the objections shall be filed unless granted leave by the district court.

On March 8, 2013, the Defendant filed his Objections to the Magistrate's Report and Recommendation on Competency. (Doc. 115). The government filed its response on March 14, 2013. (Doc. 116). On March 21, 2013, the Defendant filed a reply. (Doc. 117).

### III.   COMPETENCY STANDARD

Criminal defendants have a constitutional right to be competent during trial. *Indiana v. Edwards,* 554 U.S. 164, 170, 128 S.Ct. 2379 (2008). The standard for mental competency is whether an individual has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788 (1960). "Whether a defendant is capable of understanding the proceedings and assisting counsel is dependent upon evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence." *United States v. Gastelum-Almeida*, 298 F.3d 1167, 1171 (9th Cir. 2002) quoting *Miles v. Stainer,* 108 F.3d 1109, 1112 (9th Cir.1997). The government has the burden of demonstrating that the defendant is competent to stand trial by a preponderance

of the evidence. *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991).

### IV.  COMPETENCY HEARING

On October 10 and December 7, 2012 and January 11, 2013, Magistrate Judge D. Thomas Ferraro conducted a three day competency hearing.[1] The Defendant was initially examined by Dr. Hermosillo-Romo on July 19, 2011, at the request of defense counsel. (Doc. 103 at pp. 5-6). Dr. Hermosillo-Romo's examination lasted approximately four hours. (Doc. 86 at p. 82). His examination consisted of a background interview and a basic mental status examination, which was followed by a series of tests. (Doc. 86 at p. 83). These tests included an IQ test[2], the digit span and digit symbol tests, a passage comprehension test, a memory malingering test, a mini mental status state examination, and the modified competency assessment instrument. (Doc. 86 at pp. 84-85). Dr. Hermosillo-Romo concluded after his examination that the Defendant was not competent to proceed to trial. (Doc. 86 at p. 89). He did not believe that the Defendant was malingering during his examination. (Doc. 87 at p. 57).

Significant to his conclusion were the answers the Defendant provided to specific questions about how the judicial system works, the identification of the different professionals involved in a legal case, the court procedures, and plea bargains. Prior to formulating his opinion, Dr. Hermosillo-Romo considered the Defendant's low IQ score, his demeanor during the interview, Defendant's background information derived from his sister, school records, and the information provided by defense counsel.[3] (Doc. 86 at p.

---

[1] These hearings have been transcribed. The transcripts are at docket numbers 86, 87, and 103.

[2] The transcript indicates that Dr. Hermosillo-Romo determined through his testing that the Defendant's IQ was 63 with a verbal IQ of 58 and a non-verbal IQ of 78. (Doc. 87 at p. 43). However, Dr. Hermosillo-Romo's report indicates a full scale IQ of 63 with a verbal IQ of 58 and a non-verbal IQ of 72. (Doc. 47).

[3] Defense counsel had provided Dr. Hermosillo-Romo with information regarding the Defendant's behavior including his failure to show up for meetings, failure to gather specific information requested by defense counsel, a copy of defense counsel's motion regarding competency, and information derived from the Defendant's sister regarding the Defendant's competency. (Doc. 103 at pp. 8-9).

- 4 -

89; Doc. 87 at p. 29). Dr. Hermosillo-Romo explained that the Defendant's background information and his low IQ score were significant to his conclusions regarding competency. (Doc. 87 at pp. 30, 64).

The Defendant's sister provided Dr. Hermosillo-Romo with Defendant's background information regarding adaptive behavior.[4] (Doc. 87 at p. 64). When interviewed by the pretrial services officer, the Defendant explained that he had been living alone for the past three years. He also provided his residence history, family history, educational history and employment history. As part of his employment history, the Defendant informed pretrial services that he is presently employed as a truck driver, a position he had held for the past two years prior to his arrest. (Doc. 36).

During her interview, the Defendant's sister told Dr. Hermosillo-Romo that the Defendant had difficulty maintaining proper hygiene, could not maintain employment, and could not live independently. (Doc. 87 at pp. 65-66). However, when the Defendant's sister was previously interviewed by the pretrial services officer, she had corroborated everything the Defendant claimed regarding his background.[5] (Doc. 36). Dr. Hermosillo-Romo acknowledged that he never attempted to corroborate any of the background information provided to him by the Defendant's sister, which was significant to his conclusions regarding competency. (Doc. 87 at p. 64; Doc. 103 at pp. 11-12, 14-18). The contradictory information from Defendant's sister and Defendant's previous ability to communicate his background to pretrial services, counters Dr. Hermosillo-Romo's conclusion that the Defendant and his sister were not malingering during his examination.

After Dr. Hermosillo-Romo formulated his opinion regarding the Defendant's

---

[4] The Magistrate Judge ascribed minimal credibility to Olivia Flores. (Doc. 113 at p. 9). After an independent review of the record, this Court sees no basis to disturb the Magistrate Judge's finding regarding credibility. The record clearly supports his findings.

[5] The purpose of the interview with pretrial services was to attain a recommendation regarding the Defendant's potential release following his arrest. In contrast, the purpose of the interview with Dr. Hermosillo-Romo was to determine whether the Defendant was competent to stand trial.

1  competency, the Magistrate Judge committed the Defendant to Butner. (Doc. 49). Dr.
2  Sarah Ralston, a staff psychiatrist at Butner, was in charge of a team of nurses, correction
3  staff, medical physicians, and a psychologist that monitored the Defendant over a period
4  of four months. (Doc. 86 at pp. 12-13). The purpose of this four month evaluation was
5  to determine the Defendant's initial competency and attempt to educate and restore him
6  to competency.[6] (Doc. 86 at pp. 12-14).

Dr. Ralston reviewed the Defendant's educational records, his prior IQ scores, the orders of the Court and Dr. Hermosillo-Romo's report. Additionally, Dr. Reardon, a psychologist, conducted a series of tests on the Defendant including a TOMM test to determine if the Defendant was malingering, a Validity Indicator Profile test, to determine if the Defendant's answers on tests were a valid reflection of his cognitive abilities, and a Shipley test to determine his verbal and nonverbal cognitive abilities. (Doc. 86 at pp. 17-19).

Dr. Ralston explained that an individual's IQ has some significance in determining whether someone is competent to stand trial. (Doc. 86 at p. 20-21). At age 12 the Defendant's full scale IQ was 68, his verbal IQ was 65, and his nonverbal IQ was 75. The records indicated that his lower verbal score was related to his poor proficiency in English and that his actual IQ was likely closer to his nonverbal score of 75.[7] (Doc. 86 at p. 21-22). At age 15, the Defendant's full scale IQ was 80, his verbal IQ was 75, and his nonverbal IQ was 89. (Doc. 87 at p. 43).[8] Dr. Hermosillo-Romo's conclusion that

---

[6] As part of their effort to restore competency, Butner provides education regarding the court system. (Doc. 86 at p. 13).

[7] Dr. Hermosillo-Romo concluded that a lack of English proficiency was likely not the cause of the Defendant's low verbal IQ scores and it was probably his auditory processing deficit, which would mean that his full scale IQ score of 68 was an accurate reflection of his abilities. (Doc. 87 at pp. 53-55). The Defendant's school records indicated that he suffered from an auditory processing deficit. (Doc. 86 at p. 22).

[8] Dr. Hermosillo-Romo determined that the Defendant's full scale IQ score of 80 when he was 15 could not have been accurate and speculated that the tester was not competent to administer the test. (Doc. 87 at pp. 51-53). Dr. Ralston concluded that his IQ score of 80 was a more accurate reflection of his abilities and was higher than his prior score due to his improved English proficiency. (Doc. 86 at p. 23).

Defendant's actual IQ is closer to the 63 he scored on the IQ test conducted by Dr. Hermosillo-Romo, would place Defendant in the category of the mildly mentally retarded.[9]  Dr. Ralston concluded that the Defendant's IQ was probably closer to the full scale IQ score of 80 he received when he was tested at age 15.  (Doc. 86 at p. 48).  This would place the Defendant in the borderline intellectual functioning category instead of the mildly mentally retarded category.  (Doc. 86 at p. 71).

The two doctors differ in their opinions of the Defendant's actual IQ score and whether the Defendant is mildly mentally retarded or suffers from borderline intellectual functioning.  However, as explained by Dr. Ralston, a mildly mentally retarded person generally has issues with adaptive functioning including his ability to interact with others, to keep good hygiene, to hold a job, and to perform daily tasks.  (Doc. 86 at p. 69).  During the four months that the Defendant lived at Butner, he maintained adequate hygiene, he always dressed appropriately, and he was able to hold a job, initially working in the kitchen serving food and then moving onto a higher level position in shipping and receiving.[10]  (Doc. 86 at pp. 30-31).  Further, his employers at Butner regarded the Defendant as an exemplary employee who mentored others.  (Doc. 86 at p. 32).

Defendant's sister had described Defendant as an individual with poor adaptive functioning to Dr. Hermosillo-Romo.  However, that description is in significant contrast to the background provided by Defendant and his sister to the pretrial services officer and Dr. Ralston's observations of him during his four months at Butner.  Thus, while the IQ score acquired by Dr. Hermosillo-Romo identifies the Defendant as mildly mentally retarded, the government has demonstrated that Defendant is able to function and learn about the legal system consistent with a finding of competency.  This, coupled with the Defendant and his sister's probable malingering during their interviews with Dr.

---

[9] A mildly mentally retarded individual has an IQ in the range of 50 to 70.  (Doc. 86 at p. 69).

[10] This is in direct contradiction to the allegations of the Defendant's sister when she was interviewed by Dr. Hermosillo-Romo, in which she claimed that the Defendant maintained poor hygiene and was unable to maintain a job.  (Doc. 87 at pp. 65-66).

- 7 -

1  Hermosillo-Romo and the clear malingering by the Defendant during his testing at
2  Butner,[11] leads this Court to credit the conclusion of Dr. Ralston regarding the
3  Defendant's actual IQ over that of Dr. Hermosillo-Romo.  *See United States v. Frank,*
4  956 F.2d 872, 875 (9th Cir. 1991)("in performing its fact finding and credibility functions,
5  a district court is free to assign greater weight to the findings of experts produced by the
6  government than to the opposing opinions of the medical witnesses produced by the
7  defendant.").

8  Moreover, even if Dr. Hermosillo-Romo's conclusion regarding the Defendant's
9  IQ is accurate, Dr. Ralston explained that approximately 70% of those suffering from
10 mild mental retardation have been shown to be competent to stand trial.  (Doc. 86 at pp.
11 20, 71).  Additionally, Dr. Ralston's opinion that the Defendant is competent to stand trial
12 was not entirely based on whether the Defendant is borderline intellectual functioning or
13 mildly mentally retarded.  Thus, it is not based entirely on his IQ.  (Doc. 86 at p. 71).

14 Dr. Ralston personally met with the Defendant approximately twelve times over
15 the course of their four month evaluation, spending an average of 20 to 30 minutes with
16 the Defendant during each visit.  (Doc. 86 at p. 32).  During the course of his stay at
17 Butner, Dr. Ralston determined that the Defendant had a factual understanding of the
18 charges against him, he could identify potential witnesses, and he had an understanding
19 of evidence in the case and the concept of a plea bargain.[12]  (Doc. 86 at p. 33).  Further,
20 the Defendant understood the role of the defense attorney and the prosecutor in the case.
21 (Doc. 86 at p. 34).  Moreover, during a review of recorded telephone calls with his sister,

---

[11] Defendant's poor performance on some tests while at Butner was determined to be a clear effort on his part to malinger based primarily on his test scores. (Doc. 86 at pp. 28-30). This fact was confirmed by Dr. Hermosillo-Romo. (Doc. 87 at p. 58).

[12] In his objection to the Report and Recommendation, the Defendant argues that Dr. Ralston's notes of her interviews with the Defendant contradict her conclusion. However, as explained by Dr. Ralston, her notes were not verbatim responses to her questions and usually were only abbreviated excerpts of his responses. (Doc. 103 at pp. 62, 64). Additionally, some of the notes reflected interviews with the Defendant when he initially arrived at Butner, and as explained by Dr. Ralston, the Defendant had attained a better understanding of the judicial process throughout his stay at Butner. (Doc. 103 at pp. 64-65).

1  the Defendant was forthcoming about his charges, he instructed his sister to contact his
2  attorney and provided her with instructions on how to access his voicemails and the best
3  times to reach him.[13]  (Doc. 86 at p. 38).  Based on her four month observation of the
4  Defendant, Dr. Ralston concluded that the Defendant is competent to stand trial.

5  Dr. Hermosillo-Romo opined that the Defendant was not competent upon his
6  arrival at Butner, however, he acknowledged that during his stay, he was able to learn
7  concepts on adjudicative competency.  (Doc. 103 at p. 100).  Dr. Hermosillo-Romo
8  ultimately determined that the Defendant was still not competent because he had a
9  juvenile or childish view of the legal system.  (Doc. 103 at p. 103).  However, Dr.
10 Hermosillo-Romo admitted that he was not qualified to determine whether a juvenile
11 would be competent to stand trial.  (Doc. 103 at p. 103-104).

12 Dr. Romo interviewed the Defendant one time for four hours on July 19, 2011.
13 Subsequently, the Defendant spent four months at Butner, where he was regularly
14 observed, tested and educated.  After the conclusion of his stay at Butner, Dr. Ralston
15 concluded that the Defendant was competent to proceed to trial and assist in his own
16 defense.  Dr. Hermosillo-Romo admitted that despite his conclusion that the Defendant
17 was not competent, he believed the Defendant could become competent after receiving
18 some education and training.[14]  (Doc. 103 at p. 104).  As noted by the Magistrate Judge,
19 this process of education has already taken place at Butner.

---

[13] The recorded phone calls also included a portion of a conversation between the Defendant and his sister, where his sister purportedly advises the Defendant not to permit the people at Butner to manipulate him.  (Doc. 103 at p. 132).  The Magistrate Judge found that the sister was trying to coach the Defendant so that he would be found incompetent.  However, as explained by Dr. Ralston, even if the Defendant's sister was trying to coach the Defendant to do poorly on the tests, it did not have a direct effect on his competency, but explained why he may not have been fully representing his own abilities during the tests.  (Doc. 86 at pp. 39-40).

[14] In the Report and Recommendation, the Magistrate Judge wrote that Dr. Hermosillo-Romo believed that defense counsel could educate the Defendant rendering him competent.  (Doc. 113).  In Defendant's Objection to the Report and Recommendation, he argues that the Magistrate Judge mistakenly interpreted the testimony of Dr. Hermosillo-Romo, who only testified that Defendant could be educated and restored to competency as opposed to defense counsel educating the Defendant.  This discrepancy is of no moment.  What is important is the fact that Dr. Hermosillo-Romo opined that the Defendant could be educated and restored to competency.

After a *de novo* review of the record, the Court agrees with Magistrate Judge Ferraro that the government has met its burden by a preponderance of the evidence and that the Defendant is competent to proceed to trial and assist his counsel in his defense.

## V.     DEFENDANT'S REPLY

Pursuant to the Magistrate Judge's Report and Recommendation, each party was granted leave to file objections to the Report and Recommendation and a response to any objections.  However, the Report and Recommendation specifically precluded the filing of any reply briefs unless leave was granted by the district court.  Defendant filed a reply brief on March 21, 2013 without leave of court.

The reply is stricken.  Defense counsel failed to follow the Court's Order requiring leave of court before filing a reply.  Further, the issues at hand have been exhaustively briefed by counsel before the Magistrate Judge and this Court.

Accordingly, IT IS ORDERED:

1.     The Report and Recommendation of Competency (Doc. 113) is ADOPTED.  The Defendant is competent to proceed to trial.

2.     The Clerk of Court is directed to strike the reply (Doc. 117) from the docket.  Further, defense counsel is directed not to submit a voucher for payment for the time spent preparing the reply.

3.     **A status conference is set before the Honorable Cindy K. Jorgenson on May 17, 2013 at 10:00 a.m.**

4.     The date by which the referred magistrate judge hears the change of plea must be no later than **May 24, 2013**.

5.     All motions, unless made during a hearing or trial, shall be in writing and shall be made sufficiently in advance of trial to comply with the time periods set forth in LRCiv. 7.2 and any court order and to avoid any delays in the trial.  Pretrial motions may be heard before a magistrate judge and a Report and Recommendation will be provided to

1  the district judge assigned to the case.

2      6.    **This matter is set for trial on June 11, 2013**.  Counsel are to be present at 9:00 a.m.

4      7.    Excludable delay under 18 U.S.C. §3161(h)(7) is found to commence on May 9, 2013 and end on June 11, 2013.  Such time shall be in addition to other excludable time under the Speedy Trial Act and shall commence as of the day following the day that would otherwise be the last day for commencement of trial.

8      8.    Any motion or stipulation to continue the scheduled trial date and change of plea hearing deadline shall be submitted in writing and filed with the Clerk of Court no later than 5:00 p.m., Tuesday, **May 28, 2013**.

11  Dated this 9th day of May, 2013.

                                                          */s/ Cindy K. Jorgenson*
                                                          Cindy K. Jorgenson
                                                          United States District Judge